O

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOVA DONALD JAMES NOVOBILSKI, et al.,<br><br>                              Plaintiffs,<br><br>        v.<br><br><br>SPECIALIZED LOAN SERVICING, LLC, et al.,<br><br>                              Defendants. | Case No.: 2:22-cv-00147-MEMF-MAR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [ECF NO. 31] AND REQUEST FOR JUDICIAL NOTICE [ECF NO. 32]** |

Before the Court is Defendant Specialized Loan Servicing, LLC's Motion to Dismiss (ECF No. 31) and Request for Judicial Notice (ECF No. 32). The Court heard oral argument on the matter on August 4, 2022. For the reasons stated herein, the Court GRANTS the Request for Judicial Notice with respect to Exhibits 1–6 and DENIES the Request for Judicial Notice with respect to Exhibits 7–14. The Court GRANTS the Moton to Dismiss as to the CAL. CIV. CODE § 2924.17, promissory estoppel, negligent misrepresentation, wrongful foreclosure, and CAL. BUS. & PROF. CODE § 17200 claims WITHOUT LEAVE TO AMEND. The Court DENIES the Motion to Dismiss as to the

1 Federal Fair Debt Collection Practice Act, Rosenthal Fair Debt Collections Practices Act, and Truth

2 in Lending Act claims.

3 **BACKGROUND**

4 **I.      Factual Background[1]**

5         Plaintiffs Nova Donald James Novobilski and Cathy Novobilski (collectively, the

6 "Novobilskis") bring this suit against Defendants Specialized Loan Servicing, LLC ("SLS"), Affinia

7 Default Services, LLC ("ADS"), and Does 1 through 100. In 2006, the Novobilskis obtained a home

8 mortgage with National City Bank of Indiana (the "Bank"), who agreed to loan the Novobilskis

9 $190,000 secured against their real property through a second position Deed of Trust. FAC ¶ 12.

10 Thereafter, the Novobilskis were unable to make timely payments on their loan and it became

11 "underwater"[2] and "unsecured."[3] *Id*. ¶¶ 13–14. In June 2021,

12         ADS, on behalf of SLS, recorded a Notice of Default and Election to Sell Under Deed of

13 Trust on the Novobilskis' property. *Id*. ¶ 15. SLS is the servicer[4] for the loan, ECF No. 31 ("Motion"

14 or "Mot.") at 1, and ADS is the foreclosure trustee.[5] ECF No. 16 at 2. However, the Novobilskis

15 were never provided with any notice or recording informing them that the Bank—the previous

16 trustee—had assigned, transferred, or sold its rights under the Deed of Trust to ADS. FAC ¶ 15. Nor

17 did they ever receive a letter from SLS or ADS informing them that SLS was now servicing the loan.

18 *Id*. ¶ 16. The Novobilskis repeatedly, but unsuccessfully, contacted SLS to confirm the debt, request

19 documents that would authenticate the loan, and discuss loss mitigation options. *Id*. ¶¶ 17–19. They

20 seek relief from foreclosure. *Id*. ¶ 19.

21

22 _____

23 [1] The facts below are from the First Amended Complaint. ECF No. 25 ("First Amended Complaint" or
24 "FAC").
   [2] The Court understands the term "underwater" to be a reference to a situation in which a borrower owes more
25 on a loan than the property securing the loan is worth.
   [3] The Court understands the term "unsecured" to be a reference to a situation in which a borrower owes more
26 on a loan than the property securing the loan is worth and, as a result, the property is no longer sufficient to
   secure the loan.
27 [4] The Court understands the term "servicer" to be a reference to the company that typically collects interest,
   principal, and escrow payments from a borrower of a loan.
28 [5] The Court understands the term "foreclosure trustee" to be a reference to the entity appointed to move a
   nonjudicial foreclosure process forward.

## II.    Procedural History

On December 2, 2021, the Novobilskis filed a complaint against SLS and ADS in the Superior Court of the State of California for the County of Los Angeles. ECF No. 1-1. On January 7, 2022, SLS removed the case to federal court and, one week later, on January 14, 2022, filed a Motion to Dismiss. ECF Nos. 1-1, 8, 14. On February 10, 2022, by order of the Chief Judge, this case was reassigned to the current Court. ECF No. 10. On April 22, 2022, this Court granted the Motion to Dismiss as to all claims with leave to amend and ordered the Novobilskis to file an amended complaint within thirty days if they still wished to pursue the claims being dismissed. Order Granting Motion to Dismiss, ECF No. 23 ("April 22 MTD Order"), at 18. The Novobilskis filed a First Amended Complaint on May 25, 2022, thereby failing to meet the thirty-day deadline set by the Court, *see* April 22 MTD Order at 18. The First Amended Complaint alleged the same seven causes of action: (1) violation of the Federal Fair Debt Collection Practice Act ("FDCPA") and Rosenthal Fair Debt Collections Practices Act ("Rosenthal Act"); (2) violation of the Truth in Lending Act ("TILA"); (3) violation of CAL. CIV. CODE § 2924.17; (4) promissory estoppel[6]; (5) negligent misrepresentation[7]; (6) wrongful foreclosure; and (7) violation of CAL. BUS. & PROF. CODE § 17200 (the "UCL"). *See generally* FAC. On June 8, 2022, SLS filed the instant Motion to Dismiss the First Amended Complaint, *see generally* ECF No. 31 ("Mot." or "Motion"). The Novobilskis did not file an Opposition to the Motion.[8] *See* ECF No. 33 ("Reply"). SLS submitted a Reply in support of the instant Motion on July 8, 2022. *Id.* The Court held a hearing on this matter on August 4, 2022.[9]

---

[6] The promissory estoppel claim is only asserted against Defendant SLS. FAC at 11.

[7] The negligent misrepresentation claim is only asserted against Defendants SLS and ADS. FAC at 12.

[8] Under C.D. Cal. L.R. 7-12, the Court may decline to consider any untimely filed opposition, and the failure to file a timely opposition "may be deemed consent to the granting . . . of the motion." C.D. Cal. L.R. 7-12. *Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (noting that a plaintiff failing to raise an issue in response to a motion to dismiss "has effectively abandoned his claim"). Here, however, the Court chooses to exercise its discretion to consider the Motion on its merits.

[9] The Court notes that neither the Novobilskis nor their representative appeared during the hearing. As a result, the Court will issue an Order to Show Cause for failure to prosecute concurrently with this Order.

## REQUEST FOR JUDICIAL NOTICE AND CONSIDERATION OF EXTRINSIC EVIDENCE

### I. Applicable Law

A court may take judicial notice of facts not subject to reasonable dispute where the facts "(1) [are] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Under this standard, courts may take judicial notice of "*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts stated in public records." *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). Moreover, even when documents are not physically attached to the complaint, courts may nonetheless consider such documents if: "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011); *Lee*, 250 F.3d at 688.

### II. Discussion

SLS submits—and asks the Court to take judicial notice of—fourteen (14) exhibits in support of its Motion to Dismiss:

1. Deed of Trust recorded on May 19, 2006, in the Official Records of the County of Los Angeles, California as Document Number 061107289.

2. Assignment of Deed of Trust recorded on February 24, 2009, in the Official Records of the County of Los Angeles, California as Document Number 20090257622.

3. Assignment of Deed of Trust recorded on December 31, 2018, in the Official Records of the County of Los Angeles, California as Document Number 20181320957.

4. Substitution of Trustee recorded on April 2, 2021, in the Official Records of the County of Los Angeles, California as Document Number 20210524492.

5. Notice of Default recorded on June 23, 2021, in the Official Records of the County of Los Angeles, California as Document Number 20210985805.

4

6. Notice of Trustee's Sale recorded on February 2, 2022, in the Official Records of the County of Los Angeles, California as Document Number 20220132171.

7. Purported correspondence from SLS to the Novobilskis dated July 9, 2021, allegedly regarding the Novobilskis' request for mortgage assistance.

8. Purported correspondence from SLS to the Novobilskis dated July 14, 2021, allegedly regarding the mortgage relief options the Novobilskis were evaluated for and the results of that evaluation.

9. Purported correspondence from SLS to the Novobilskis dated August 6, 2021, allegedly stating the Novobilskis failed to accept the offer for mortgage relief assistance to cure the Novobilskis' delinquency.

10. Purported correspondence from the Novobilskis to SLS dated July 27, 2021, allegedly regarding the Novobilskis' request for the original signed loan documents and terms of the loan, as well as all amortized schedules and payments made and processed on the loan (i.e., verification of the Novobilskis' debt and authentication of the subject loan).

11. Purported correspondence from SLS to the Novobilskis dated August 27, 2021, allegedly confirming SLS was researching the request for verification of the Novobilskis' debt and authentication of the subject loan.

12. Purported correspondence from SLS to the Novobilskis dated August 30, 2021, which allegedly includes documents verifying the Novobilskis' debt and authenticating the subject loan.

13. Purported monthly mortgage statements from SLS to the Novobilskis beginning in February 2015, when SLS began servicing the subject loan, through May 2021, the month before the Notice of Default was recorded.

14. Purported mortgage statement dated June 1, 2021, which allegedly evidences the correct amount due on the subject loan.

With respect to Exhibits 1–6, the Court finds that these exhibits fall into the category of public records of state agencies widely recognized as proper subjects of judicial notice. *See, e.g.*, *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004)

(holding that a court "may take judicial notice of the records of state agencies and other undisputed matters of public record"). Although the Novobilskis contest whether they were properly provided with notice of the assignment, transfer, and sale of rights associated with the Deed of Trust, *see* FAC ¶¶ 15–16, they do not appear to contest that these transactions took place. Therefore, these exhibits are undisputed matters of public record subject to judicial notice.

However, Exhibits 7–14 are not matters of public record. Rather, these Exhibits allegedly consist of correspondence between SLS and the Novobilskis regarding loss mitigation options and the monthly mortgage statements that the Novobilskis assert they never received. As a result, these exhibits are more properly considered extrinsic evidence, not attached to the FAC. Therefore, in order for the Court to consider these exhibits, (1) the complaint must refer to these exhibits; (2) the documents must be central to the plaintiff's claim; and (3) the authenticity of these documents may not be questioned by anyone. *Corinthian Colls.*, 655 F.3d at 999. "[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2022).

"[W]here a defendant attaches extrinsic evidence to a Rule 12(b)(6) motion, the court ordinarily must convert that motion into one for summary judgment under Rule 56 to give the plaintiff an opportunity to respond. Where, however, an attached document is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff 'obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993)), *superseded by statute on other grounds*, Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, *as recognized in Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 681 (9th Cir. 2006); *see also United States v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003) (declining to consider affidavits and declarations attached to defendant's motion to dismiss under incorporation by reference doctrine where "none of the attached

documents formed the basis of [plaintiff's] complaint, and she did not refer extensively to any of them").

Here, the Novobilskis did not refer to these exhibits in their complaint. In fact, the Novobilskis explicitly allege that they never received these monthly mortgage statements or correspondence from SLS. FAC ¶¶ 24, 36, 66, 68, 81. As a result, it cannot be said that these documents are "central" or "integral" to their claims. The Novobilskis, based on their FAC, appear to be unaware of the existence of these documents. As a result, considering these documents on the Motion to Dismiss would be contrary to the rule requiring the Court to convert such a motion into a motion for summary judgment in order to allow the Novobilskis an opportunity to respond. Moreover, during the hearing on this Motion, SLS conceded that whether to take judicial notice or consider extrinsic evidence was within the Court's discretion. The Court therefore exercises its discretion to decline to consider such extrinsic evidence and to decline to convert the instant Motion into a motion for summary judgment.

In light of the foregoing, the Court therefore GRANTS SLS's Request to take judicial notice of Exhibits 1–6 but DENIES SLS's Request to take judicial notice of Exhibits 7–14.

## MOTION TO DISMISS

I.      **Applicable Law**

A.  **Motions to Dismiss for Failure to State a Claim**

Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The purpose of Rule 12(b)(6) is to "enable defendants to challenge the legal sufficiency of claims asserted in a complaint." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district court may properly dismiss a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

1    (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not

2    akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

3    acted unlawfully." *Id.* While a complaint does not need detailed factual allegations, a plaintiff's

4    obligation to provide the grounds of his entitlement to relief requires more than "threadbare recitals

5    of the elements of a cause of action." *Id.* at 678. "Determining whether a complaint states a plausible

6    claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial

7    experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting

8    *Iqbal*, 556 U.S. at 679).

9          When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded

10   material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at

11   1159; *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) ("We

12   accept factual allegations in the complaint as true and construe the pleadings in the light most

13   favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions."

14   *Iqbal*, 556 U.S. at 678.

15         Moreover, Federal Rule of Civil Procedure 9(b) states that an allegation of "fraud or mistake

16   must state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). Specifically,

17   the "circumstances" required by Rule 9(b) are the "who, what, when, where, and how" of the

18   fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003);

19   *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places,

20   benefits received, and other details of the alleged fraudulent activity."). Additionally, the allegation

21   "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at

22   1106 (quoting *In re Glenfed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). Rule 9(b)'s

23   heightened pleading standard applies not only to federal claims, but also to state law claims brought

24   in federal court. *Id.* at 1103.

25         A district court should generally grant leave to amend freely. *Cervantes v. Countrywide*

26   *Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). However, "a district court may dismiss

27   without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies

28   and amendment would be futile." *Id.* at 1041.

## II. <u>Discussion</u>

SLS contends that the Novobilskis' FAC should be dismissed because: (1) it was untimely filed; and (2) it fails to state any claims for which relief may be granted. Mot. at 3–10.

### A. The Court declines to exercise its discretion to dismiss the Novobilskis' FAC for failure to prosecute or comply with a court order under <u>FED. R. CIV. P. 41(b)</u>.

SLS contends that the Court should dismiss the Novobilskis' FAC for failure to prosecute because it was untimely filed. Mot. at 5. Under Federal Rule of Civil Procedure Rule 41(b), a defendant may move to involuntarily dismiss an action or any claim against it, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." *See* <u>FED. R. CIV. P. 41(b)</u>. A district court considering whether to grant a Rule 41(b) motion to dismiss for failure to prosecute must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to defendants/respondents; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, <u>291 F.3d 639, 642</u> (9th Cir. 2002). "We may affirm a dismissal where at least four factors support dismissal, . . . or where at least three factors strongly support dismissal." *Yourish v. Cal. Amplifier*, <u>191 F.3d 983, 990</u> (9th Cir. 1999) (internal quotation marks omitted) (citing *Ferdik v. Bonzelet*, <u>191 F.3d 983</u> (9th Cir. 1999)).

Moreover, the Ninth Circuit "has recognized an inherent power of the trial court to dismiss in order to protect the integrity of its orders. The decision to dismiss for failure to comply with an order is within the discretion of the trial judge." *Fendler v. Westgate-Cal. Corp.*, <u>527 F.2d 1168, 1170</u> (9th Cir. 1975) (citing *O'Brien v. Sinatra*, <u>315 F.2d 637, 641</u> (9th Cir. 1963); *Von Poppenheim v. Portland Boxing & Wrestling Comm'n*, <u>442 F.2d 1047, 1049</u> (9th Cir. 1971)). "[T]he failure to prosecute diligently is sufficient by itself to justify a dismissal, even in the absence of a showing of actual prejudice to the defendant from the failure." *Morris v. Morgan Stanley & Co.*, <u>942 F.2d 648, 651</u> (9th Cir. 1991) (quoting *Anderson v. Air W., Inc.*, <u>542 F.2d 522, 524</u> (9th Cir. 1976)). However, "this presumption of prejudice is a rebuttable one and if there is a showing that no actual prejudice occurred, that factor should be considered." *Anderson*, <u>542 F.2d at 524</u>.

On April 22, 2022, the Court granted SLS's Motion to Dismiss and ordered the Novobilskis to file a First Amended Complaint within thirty days of the date of the Order "if they still desire to pursue any of the claims being dismissed." April 22 MTD Order at 18. However, the Novobilskis failed to file their First Amended Complaint by this thirty-day deadline, waiting until May 25, 2022—three days after the deadline—to do so. *See* April 22 MTD Order; FAC.

With respect to the five factors considered on a motion to dismiss for failure to prosecute, the Court finds that none strongly favor dismissal. With respect to the first factor—the public interest in expeditious resolution of litigation—although the Ninth Circuit has stated that "the public's interest in expeditious resolution of litigation always favors dismissal," *Yourish*, 191 F.3d at 990, it also stated that "district judges are best situated to decide when delay *in a particular case* interferes with docket management and the public interest." *Ash v. Cvetkov*, 739 F.2d 493, 496 (9th Cir. 1984) (emphasis added). In this particular case, because the Novobilskis' delay was only by a few days, the Court finds this delay does not interfere with the public interest and that dismissal in this instance would not serve the public interest in expeditious resolution of litigation.

With respect to the second factor—the court's need to manage its docket—the Court finds that this brief delay has not prolonged the proceedings in this case in any meaningful way, although the Court acknowledges that to some extent it could be seen as allowing the Novobilskis "to control the pace of the docket rather than the Court." *Yourish*, 191 F.3d at 990. Ultimately, this factor does not weigh strongly in favor of dismissal, if at all.

Turning to the third factor—the risk of prejudice to SLS—the brevity of the delay and the nature of the reason suggest a very slight risk to SLS, and certainly not one that would strongly support dismissal. Governing authority holds that "[i]n determining whether a defendant has been prejudiced, [the Court] examine[s] whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). Accordingly, "the risk of prejudice to the defendant is related to the plaintiff's reason for defaulting in failing to timely amend." *Yourish*, 191 F.3d at 991. Because neither the Novobilskis nor their counsel appeared at the hearing on this Motion, the Court has been provided no explanation for their failure to comply with the deadline to amend. However, the Court

1    notes that on April 18, 2022, counsel for the Novobilskis filed a Motion to Withdraw as Attorney,

2    citing "a breakdown of the attorney-client relationship" and the Novobilskis' "lack of

3    communication and cooperation regarding specific instructions." ECF No. 21. This Motion was

4    withdrawn on June 1, 2022. ECF No. 30.

5        Under the circumstances, where the Novobilskis were only given thirty days to amend all of

6    their claims, the Novobilskis' late filing by three days due to a breakdown in attorney-client

7    communications does not suggest a risk of prejudice to SLS. *Cf. Malone*, 833 F.2d at 131 (finding

8    prejudice to defendant justified dismissal where defendant made diligent effort to comply with

9    pretrial order and plaintiff "waited until the last minute" to notify defendant that plaintiff would not

10   comply with pretrial order); *Yourish*, 191 F.3d at 991–92 (finding prejudice to defendants "strongly

11   favor[ed] dismissal" where plaintiff failed to file complaint by sixty-day deadline and waited until

12   after deadline to file a motion requesting a written order explaining why original complaint had been

13   dismissed).

14       With respect to the fourth factor, public policy strongly favors disposition of actions on the

15   merits. Moreover, with respect to the fifth factor, a less drastic alternative—namely, accepting the

16   untimely FAC and ruling on the Motion to Dismiss on the merits—exists.

17       Ultimately, although the Court finds that at this point in the litigation, these factors do not

18   strongly weigh in favor of dismissal of the Novobilskis' FAC under 41(b) either for failure to

19   prosecute *or* for failure to comply with the Court's April 22 Order. The Court will therefore exercise

20   its discretion to decline to DENY the Motion to Dismiss the FAC on this ground and will instead

21   consider the Motion on the merits.

22
23   **B.  The Novobilskis sufficiently state a claim for violation of the Rosenthal Act, FDCPA, and TILA.**

24       SLS again seeks to dismiss the Novobilskis' claims for violation of the Rosenthal Act,

25   FDCPA, and TILA because they failed to state a claim for which relief may be granted. Mot. at 3–4.

26   The FDCPA prohibits a debt collector from "us[ing] any false, deceptive, or misleading." *Riggs v.*

27   *Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). To establish violations of the FDCPA and

28   the Rosenthal Act, the Novobilskis must allege: (1) they were consumers (2) who were the object of

a collection activity arising from a consumer debt, and (3) the defendant is a "debt collector," (4) who engaged in an act or omission prohibited by FDCPA or Rosenthal Act. *Turner v. Cook*, 362 F.3d 1219, 1227–28 (9th Cir. 2004).

In its April 22 MTD Order, the Court held that the Novobilskis failed to sufficiently state a claim for the Rosenthal Act and the FDCPA because the allegations in the original complaint were "insufficient . . . to put SLS on notice as to the specific *facts* from which the Novobilskis' claims arise." April 22 MTD Order at 4–6. The Court also concluded that the Novobilskis' "allegations provided [with respect to their TILA claim] are nothing more than 'threadbare recitals' of the elements for a violation of the TILA 'supported by conclusory statements'" that "fail to provide SLS with any insight into why the Novobilskis believe their loan 'was charged off' . . . or the amount in interest and other fees accrued on the loan." April 22 MTD Order at 7–8.

The Novobilskis contend that SLS violated the Rosenthal Act and FDCPA by violating the TILA. Under the TILA, a servicer is required to provide monthly statements unless a loan is, among other exceptions, charged off. 12 C.F.R. § 1026.41(e)(6)(i)(A). Under such circumstances, the servicer may not charge additional fees or interest on the account. The Novobilskis argue that SLS violated TILA by (1) illegally accruing interest and other fees on the loan after the loan was charged off; or (2) in the event that the loan was not charged off, failing to provide the requisite monthly statements. With respect to the Rosenthal Act and FDCPA claim, the First Amended Complaint contains the following new allegations:

> 23.    **Plaintiffs are a "consumer" as defined by the FDCPA, as the mortgage debt contemplated herein arises out of a consumer transaction primarily for personal, family and household purposes, to wit: on or around May 9, 2006, Plaintiffs entered into a home mortgage with National City Bank of Indiana ("National City Bank") (the "Loan"). National City Bank agreed to loan the Plaintiffs a sum of $190,000.00 secured by the Property through a second position Deed of Trust, then and now the primary residence and home for Plaintiffs and their family. National City Bank was the named beneficiary and the trustee under the Deed of Trust.**
> 24.    SLS **and Affinia** are a debt collector as defined by both the FDCPA and the Rosenthal Fair Debt Collections Practices Act. **Under Federal Law, both a lender and servicer are required to provide monthly statements unless a loan is in active bankruptcy or charged off. 12 CFR § 1026.41. Plaintiffs have not received any statement on their loan in a number of years.**
> 25.    **[The Novobilskis] are unsure if the subject second loan was charged off. As can be seen by the recorded Notice of Default ("NOD") served upon [the**

**Novobilskis], Defendant National City Bank has illegally accrued interest and other fees on the loan for the duration of the time the loan was charged off.**

26.     **In the alternative, for purposes of specificity, and assuming arguendo, the loan was not actually charged off, then National City Bank, and its predecessors in interest (as well as the current beneficiary and its predecessors in interest, the Defendants SLS and Affinia) have violated TILAs monthly statement mandate. 12 CFR § 1026.41. Also** *see* **"Regulation Z Statutes" 12 CFR § 1026.7 (requirement to send monthly mortgage statements) and 12 CFR 1026.5(b)(2) (charge off requires them to stop accruing fees and interest).**

27.     The FDCPA prohibits a debt collector from making a false representation of the amount, character or status of a debt. **Pursuant to 15 U.S.C. 1692(e), "a Debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt". A false representation of "the character, amount, or legal status of any debt" is a violation of the prohibition pursuant to 15 U.S.C. 1629(e)(2)(A).**

FAC ¶¶ 23–27 (emphasis added to indicate new allegations). Moreover, with respect to the TILA

claim, the Novobilskis include the following new relevant allegations in their FAC:

33.     Under Federal Law, a lender and servicer are required to provide monthly statements unless a loan is in active bankruptcy or charged off. 12 CFR § 1026.41 **Plaintiffs have not received any statements on their Second Loan. Plaintiffs are unsure if the subject second loan was charged off.** If the **Second** Loan was charged off, Defendants have illegally accrued interest and other fees on the **Second** Loan for the duration of the time the Second Loan was charged off. However, if the **Second** Loan was not actually charged off, as Plaintiffs were advised, Defendants, and its predecessors in interest (as well as the current beneficiary and its predecessors in interest) have violated TILAs monthly statement mandate under 12 CFR § 1026.41. Also see "Regulation Z Statutes" 12 CFR § 1026.7 (requirement to send monthly mortgage statements) and 12 CFR 1026.5(b)(2) (charge off requires them to stop accruing fees and interest).

34.     **12 C.F.R. § 1026.41(a)(2) provides: "Periodic statements. A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section. If a mortgage loan has a billing cycle shorter than a period of 31 days (for example, a bi-weekly billing cycle), a periodic statement covering an entire month may be used. For the purposes of this section, servicer includes the creditor, assignee, or servicer, as applicable".**

35.     **12 C.F.R. § 1026.41(b) provides: "Timing of the periodic statement. The periodic statement must be delivered or placed in the mail within a reasonably prompt time after the payment due date or the end of any courtesy period provided for the previous billing cycle".**

36.     **Plaintiffs have not received any required period mortgage statements at any time Defendants has never sent a period mortgage statement to Plaintiffs at any time.**

37.     **Plaintiffs have not opted out of their right to receive periodic statements for the Loan from Defendants.**

38.    **The Loan is not a reverse mortgage as described in 12 C.F.R. § 1024.41(e)(1).**

39.    **The Loan does not secure an interest in a timeshare plan as described in 12 C.F.R. § 1024.41(e)(2).**

40.    **Defendants, and each of them, have not ever provided Plaintiffs with a coupon book that meets the requirements of 12 C.F.R. § 1024.41(e)(3).**

41.    **Defendants are not a small servicer as that term is defined in 12 C.F.R. § 1024.41(e)(4).**

42.    **For each month that Defendants failed to provide a periodic mortgage statement to Plaintiffs, they committed a clear, separate, distinct, and willful violation of 12 C.F.R. § 1026.41.**

43.    **Defendant's actions and failures, and brazen lack of responsibility, together with the failures and actions noted herein, constitute a pattern and practice of behavior in conscious disregard for plaintiffs' rights under TILA, and specifically 12 C.F.R. § 1026.**

44.    **Plaintiffs were denied the information in the periodic billing statements regarding their loan. As a result, he was denied the ability to understand the terms, amounts owing, and balances under their Note and was thus prohibited by Defendants' actions and failures from having information sufficient to perform their obligations under the Note. As a result, Plaintiffs were unable to adequately be informed of their delinquency information related to their obligations under the note, were denied the ability to review their loss mitigation options regarding the Loan, and denied their right to speak to a certified HUD counselor to assist them, whose information is required to be listed on every periodic billing statement.**

45.    **Plaintiff's reliance upon Defendants" promises were reasonable and foreseeable, as Defendant Windstream was the successor beneficiary under the Deed of Trust. TILA 1026.1(b) states:**

**"The purpose of this part is to promote the informed use of consumer credit by requiring disclosures about its terms and cost, to ensure that consumers are provided with greater and more timely information on the nature and costs of the residential real estate settlement process, and to effect certain changes in the settlement process for residential real estate that will result in more effective advance disclosure to home buyers and sellers of settlement costs. The regulation also includes substantive protections. It gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling, regulates certain credit card practices, and provides a means for fair and timely resolution of credit billing disputes"**

46.    **As an actual and proximate result of Defendants' failure to provide Plaintiffs with period billing statements and the information statutorily required to be provided therein, Plaintiffs incurred actual damages including economic damages measured by additional fees and interest accruing on the note, damages resulting from loss of pursing loss-mitigation options, including possible lost profits from sale of the property when the loan balance was more reasonable, fees and advances incurred by the lender and charged or attempted to be charged to Plaintiffs under the terms of the Note, attorney fees for Plaintiffs' attorneys and costs related thereto, communicating with lenders and servicers and attorneys for**

1    **the same in an effort to get any information related to the Loan, and additional emotional stress and physical reactions to the stress.**

2    47.    **Per <u>12 C.F.R. § 1026.41,</u>** Plaintiffs are **entitled** to actual damages, costs and attorney's fees. **Also** *see* **"Regulation Z Statutes" <u>12 CFR § 1026.7</u> (requirement to**

3    **send monthly mortgage statements) and 12 CFR 1026.5(b)(2) (charge off requires them to stop accruing fees and interest).**

4

5    FAC ¶¶ 33–47 (emphasis added to indicate new allegations).

6       SLS argues that the Novobilskis' allegations are false. Mot. at 3. In support, they submit to

7    the Court: (1) copies of monthly mortgage statements from SLS to the Novobilskis beginning in

8    February 2015 through May 2021, RJN, Ex. 13; and (2) a copy of a mortgage statement dated June

9    1, 2021, which purportedly evidences the correct amount due on the subject loan, RJN, Ex. 14. As

10    discussed above, however, the Court declines to consider this extrinsic evidence for the purpose SLS

11    offers it—namely, to show that SLS did indeed send the Novobilskis copies of their monthly

12    mortgage statements. Moreover, the Court finds it would be improper to dismiss on the ground that

13    SLS disputes the allegations set forth in the FAC using information that the Court at this stage is

14    generally not permitted to consider. Although a Court may consider extrinsic evidence contradicting

15    a complaint when relied on by the complaint, the Court may not consider the extrinsic evidence

16    presented here because the Novobilskis' FAC does not appear to rely on the evidence offered. *See*

17    *Corinthian Colls.*, <u>655 F.3d at 999</u> (noting that a Court is allowed to consider extrinsic evidence not

18    attached to a complaint if (1) the complaint refers to this extrinsic evidence; (2) the documents are

19    central to the plaintiff's claim; and (3) the authenticity of these documents are not questioned by

20    anyone).

21       As before, the Court finds that the Novobilskis again have failed to state enough facts against

22    SLS to establish that SLS violated TILA by illegally accruing interest and other fees on the loan

23    after the loan was charged off. The allegations provided are nothing more than "threadbare recitals"

24    of the elements for violation of TILA "supported by conclusory statements." *Iqbal*, <u>556 U.S. at 563</u>.

25    Specifically, the Novobilskis failed to provide any insight into why they believed the loan was

26    "charged off" or the amount in interest and other fees accrued. *See* FAC ¶¶ 25, 33, and 81. However,

27    the Court finds that the Novobilskis sufficiently plead, in the alternative, that SLS violated TILA by

28

failing to provide copies of their monthly mortgage statements. In the FAC, the Novobilskis claim that SLS never sent a periodic mortgage statement to them at any time. *See* FAC ¶ 36.

Because the Novobilskis' Rosenthal Act and FDCPA claims rely on SLS's alleged violation of TILA, the Court therefore finds that the Novobilskis sufficiently alleged that SLS violated the Rosenthal Act, FDCPA and TILA by failing to provide copies of their monthly mortgage statements. Thus, the Court hereby DENIES SLS's Motion to Dismiss with regard to the Novobilskis' claims for violation of the Rosenthal Act, FDCPA, and TILA.

**C.   The Novobilskis fail to state a claim for violation of <u>Cal. Civ. Code § 2924.17</u>.**

SLS further seeks dismissal of the Novobilskis' third claim for violation of the <u>Cal. Civ. Code § 2924.17</u>. Section 2924.17 requires that any Notice of Default "be accurate and complete and supported by competent and reliable evidence." <u>Cal. Civ. Code § 2924.17(a)</u>. A mortgage servicer recording or filing a Notice of Default must therefore review "competent and reliable evidence to substantiate the borrower's default." *Id*. § 2924.17(b).

In the April 22 MTD Order, the Court found that the Novobilskis failed to state a claim for violation of <u>Cal. Civ. Code § 2924.17</u> because (1) § 2924.17 does not provide the preforclosure injunctive relief that the Novobilskis seek, April 22 MTD Order at 9 (citing *Lucioni v. Bank of Am., N.A.*, <u>207 Cal. Rptr. 3d 418, 426</u> (Ct. App. 2016)); and (2) the original complaint failed to allege non-conclusory statements with supporting facts sufficient to establish a cause of action for violation of the California Civil Code, April 22 MTD Order at 9–10. With respect to this second deficiency, the Court noted that the Complaint "fail[ed] to include any facts as to their amount of debt, what charges were improper and the amount, or what 'competent and reliable evidence' the Novobilskis believe SLS failed to review." April 22 MTD Order.

The First Amended Complaint, which the Novobilskis minimally amended with respect to their California Civil Code claim, contains the following relevant allegations:

> 51.    [SLS] failed to properly calculate the amount due and owing under [the Novobilskis'] loan, **considering and they** are prohibited from accruing interest and fees on the loan for the time it was charged off **per TILA as stated supra**.
> 52.    [SLS] charged interest and other fees for the time the loan was charged off, in violation of Federal Law.

53.    [SLS] failed to review "competent and reliable evidence" in providing the information that it included in the recorded notice of default.

54.    Specifically, the notice of default contains an illegally inflated amount required to reinstate the loan. [The Novobilskis'] reinstatement amount is only possible if [SLS] have continued to accrue interest on the loan during charge-off, in violation of TILA.

FAC ¶¶ 51–54 (emphasis added to indicate new relevant allegations).

As an initial matter, CAL. CIV. CODE § 2924.17 still fails to provide the preforclosure injunctive relief sought by the Novobilskis. *See* April 22 MTD Order at 9.

The Court also finds that it is unclear whether the Novobilskis are asserting that their loan was in fact charged off. The FAC reads that "Defendants . . . charged interest and other fees for the time the loan was *charged off*, in violation of Federal Law." FAC ¶¶ 52 (emphasis added). However, the Novobilskis repeat several times throughout their FAC that they are "unsure if the subject second loan was charged off." *Id.* ¶¶ 25, 33, 81.

Additionally, the Novobilskis' FAC appears to suffer from the same deficiencies that existed in their original Complaint. The Novobilskis have not pleaded facts as to their amount of debt, what charges were improper and the amount, or what "competent and reliable evidence" the Novobilskis believe SLS failed to review. *See* April 22 MTD Order at 10. Absent further facts detailing the bases of their claim, the FAC again fails to plausibly allege a violation of § 2924.17. Moreover, the Novobilskis failed to file an opposition or appear at the hearing in this matter and therefore have not furnished the Court with any additional information suggesting that they would be able to cure this defect through amendment. Thus, the Court GRANTS SLS's Motion to Dismiss with respect to the CAL. CIV. CODE § 2924.17 claim WITHOUT LEAVE TO AMEND.

**D. The Novobilskis fail to state a claim for promissory estoppel.**

Next, SLS seeks dismissal of the Novobilskis' fourth claim for promissory estoppel. Mot. at 5. In its April 22 MTD Order, the Court dismissed the Novobilskis' allegations with respect to promissory estoppel because they failed to allege that they were injured by their reliance on SLS's promise to provide documentation and loss mitigation options by pleading, for example, "that they may have been able to secure alternative loans and/or refinancing had they not relied on SLS's

promises." April 22 MTD Order at 11. The FAC alleged the following with respect to the

promissory estoppel claim:

> 59.    As alleged above, **Defendants SLS and Affinia** promised to send the Plaintiffs documentation confirming the debt and providing Plaintiffs with loss mitigation options. Plaintiffs **relied upon the said repeated promises made by authorized representatives and agents of Defendants SLS and Affinia**, and forwent alternative loans and refinancing for the Property and to the underlying Loans secured by the Property, in reliance upon the promises made by **said Defendants to furnish the promised aforesaid documentation.**
> 60.    **Instead, authorized agents/employees of Defendants, and each of them,** breached the terms of its promises by not honoring the promises made to Plaintiffs, **not sending any required loss mitigation options documents** and by initiating instead the non-judicial foreclosure process on Plaintiffs' Property.
> 61.    Plaintiffs actually relied upon the aforesaid promises of the **aforementioned** Defendants by foregoing alternative refinancing for the Property.
> 62.    Plaintiffs' reliance upon said Defendants' promises were reasonable and foreseeable, as SLS **and Affinia** were the successor beneficiaries under the Deed of Trust.
> 63.    Plaintiffs have been injured to their detriment, by relying on the promises made by **said Defendants, and each of them.** Plaintiffs now faces the imminent loss of title and possession to their Property

FAC ¶¶ 59–63 (emphasis added to indicate new allegations). A party seeking to assert promissory

estoppel must establish:

> (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.

*Flintco Pac., Inc. v. TEC Mgmt. Consultants, Inc.*, 205 Cal. Rptr. 3d 21, 26 (Ct. App. 2016) (quoting

*U.S. Ecology, Inc. v. State*, 28 Cal. Rptr. 3d 894, 905 (Ct. App. 2005)). Courts have read a

"causation" requirement into this standard—in other words, a plaintiff claiming promissory estoppel

must prove that a defendant's unfulfilled promise caused the plaintiff's damages. *U.S. Ecology*, 28

Cal. Rptr. 3d at 904–07. The test for causation with respect to a promissory estoppel claim is

whether the breach was a substantial factor in causing the damages. *Id.* at 909–10.

The Novobilskis argue that SLS promised to: (1) send them documentation confirming their

debt; and (2) provide them with loss mitigation options. *See* FAC. In particular, the Novobilskis

contend that they relied upon these promises by SLS, forwent alternative refinancing for their

1    Property, and now face the imminent loss of their title and possession to their Property. FAC ¶¶ 59,

2    61, 63, 68.

3         SLS contends that the Novobilskis were sent documentation confirming their debt and were

4    provided with loss mitigation options. Mot. at 6. Moreover, SLS submitted a copy of correspondence

5    sent by SLS, in response to the Novobilskis' request, verifying their debt, including by providing

6    notices of service transfer, copies of the note and Deed of Trust, payment history, and confirmation

7    of the original creditor and current creditor. *See* RJN, Ex. 12. SLS also submitted correspondence

8    that it sent in response to the Novobilskis' request for mortgage assistance, informing them that they

9    were approved for a mortgage assistance program. *See id.*, Ex. 8. They further allege that the

10   Novobilskis failed to accept the loss mitigation offer by the August 3, 2021 deadline and that,

11   thereafter, SLS sent the Novobilskis' correspondence advising that they would need to reapply if

12   they were interested in mortgage relief assistance. *See id.*, Ex. 9. As discussed above, the Court

13   declines to consider this extrinsic evidence. Moreover, the Court finds it would be improper to

14   dismiss on the ground that SLS disputes the allegations set forth in the FAC using information that

15   the Court at this stage is generally not permitted to consider. Although a Court may consider

16   extrinsic evidence contradicting a complaint when relied on by the complaint, the Court may not

17   consider the extrinsic evidence presented here because the Novobilskis' FAC does not rely on the

18   evidence offered. *See Corinthian Colls.*, 655 F.3d at 999 (noting the limited circumstances under

19   which a Court is allowed to consider extrinsic evidence not attached to a complaint).

20        Nonetheless, the Court finds the Novobilskis have not properly stated a claim for promissory

21   estoppel. As with the original complaint, the FAC again fails to allege the causation element—that

22   is, that they were injured by their reliance on SLS's broken promise. April 22 MTD Order at 10–12.

23   The Novobilskis failed to allege that they may have been able to secure alternative loans and/or

24   refinancing had they not relied on SLS's promises. As a result, they failed to allege that SLS's

25   broken promise was a substantial factor in causing their damages.

26        Additionally, the Novobilskis failed to file an opposition or appear at the hearing in this

27   matter and therefore have not furnished the Court with any additional information suggesting that

28

1    they would be able to cure this defect through amendment. Thus, the Court GRANTS SLS's Motion

2    to Dismiss WITHOUT LEAVE TO AMEND.

3        **E. The Novobilskis fail to state a claim for negligent misrepresentation.**

4        SLS seeks dismissal of the Novobilskis' claim for negligent misrepresentation. Mot. at 6. To

5    state a claim for negligent misrepresentation, a plaintiff must allege the following elements: (1)

6    misrepresentation of a past or existing material fact; (2) without reasonable ground for believing it to

7    be true; (3) with intent to induce another's reliance on the fact misrepresented; (4) justifiable reliance

8    on the misrepresentation; and (5) resulting damages. *Wells Fargo Bank, N.A. v. FSI, Fin. Sols., Inc.*,

9    127 Cal. Rptr. 3d 589, 600 (Ct. App. 2011). Because a negligent misrepresentation claim is one that

10   alleges fraud or mistake, it is subject to the heightened pleading requirement under FED. R. CIV. P.

11   9(b) and must be pleaded with particularity. FED. R. CIV. P. 9(b); *see also Neilson v. Union Bank of*

12   *Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("[C]laims for negligent misrepresentation

13   must meet Rule 9(b)'s particularity requirement.").

14       In its April 22 MTD Order, the Court concluded that the Novobilskis' allegations with

15   respect to their negligent misrepresentation claim failed to meet the heightened pleading standard

16   under FED. R. CIV. P. 9(b). April 22 MTD Order at 12–13. Specifically, the Court found that the

17   allegations "fall short of pleading the 'who, what, when, where, and how' of the alleged fraudulent

18   act." *Id.*

19       The Novobilskis argue that SLS negligently misrepresented that they would provide monthly

20   mortgage statements, documentation authenticating the debt, and options for loss mitigation, but

21   failed to do so. *See* FAC ¶¶ 66–68. Although SLS contends that it upheld these promises and

22   submitted exhibits in support of this assertion, as discussed previously, the Court declines to

23   consider this extrinsic evidence on the Motion to Dismiss. Moreover, the Court finds it would be

24   improper to dismiss on the ground that SLS disputes the allegations set forth in the FAC using

25   information that the Court at this stage is generally not permitted to consider. Although a Court may

26   consider extrinsic evidence contradicting a complaint when relied on by the complaint, the Court

27   may not consider the extrinsic evidence presented here because the Novobilskis' FAC does not rely

28

on the evidence offered. *See Corinthian Colls.*, 655 F.3d at 999 (noting the limited circumstances under which a Court is allowed to consider extrinsic evidence not attached to a complaint).

However, the Court nevertheless concludes that the Novobilskis' allegations again fail to meet the heightened pleading standard. Fed. R. Civ. P. 9(b); *see also* April 22 MTD Order 12–13. Although the Novobilskis identify the "who"—"Defendants, and each of them, and/or their agents and employees, whose names are currently unknown"—the allegations fall short of pleading the "when" and "how" of the alleged fraudulent act, as required by Rule 9(b). *Vess*, 317 F.3d at 1106. The Novobilskis do not discuss the method by which they contacted SLS's representatives and, despite noting that they did so "continuously," do not specify when these conversations (or attempted conversations) occurred. As a result, the allegations that exist would make it difficult for SLS to identify details regarding the Novobilskis' requests or attempted communication sufficient to allow them to defend against these allegations of misrepresentation.

As a result, the FAC fails to plead any misrepresentation on the part of SLS. "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quoting *In re Read-Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003)); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) ("The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."). Accordingly, the Court GRANTS SLS's Motion to Dismiss with regard to the Novobilskis' claim for negligent misrepresentation WITHOUT LEAVE TO AMEND.

**F. The Novobilskis fail to state a claim for wrongful foreclosure.**

SLS asserts that the Novobilskis' First Amended Complaint should be dismissed for failure to state a claim. Mot. at 7. The elements of a wrongful foreclosure cause of action are: (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor

tendered the amount of the secured indebtedness or was excused from tendering. *Citris El Dorado, LLC v. Chi. Title Co.*, 244 Cal. Rptr. 3d 372, 376–77 (Ct. App. 2019).

In its April 22 MTD Order, the Court concluded that the Novobilskis' allegations were "conclusory in nature, and do not offer facts sufficient to support a cognizable legal theory for wrongful foreclosure." April 22 MTD Order at 13–14. Specifically, the Court noted that "the Novobilskis neither allege any sale of real property, nor allege that they tendered the amount of the secured indebtedness or were excused from tendering." *Id.* In their FAC, the Novobilskis' wrongful foreclosure claim is predicated on their contention that SLS "failed to comply with the requirements of CAL. CIV. CODE § 2924."[10] FAC ¶¶ 73, 74. Notably, however, the allegations in their FAC related to their wrongful foreclosure claim are essentially identical to those that existed in their original complaint.

First, as the Court discussed previously, the Novobilskis failed to state a claim for relief under CAL. CIV. CODE § 2924. Second, the same deficiencies present in the original complaint still appear to exist in the FAC. *See* April 22 MTD Order at 13–14. The Novobilskis merely restate the allegations in their original complaint. These allegations are conclusory in nature, and do not offer facts sufficient to support a cognizable legal theory for wrongful foreclosure. For example, the Novobilskis neither allege any sale of real property, nor allege that they tendered the amount of the secured indebtedness or were excused from tendering. Nor does their FAC plead any illegal, fraudulent, or willfully oppressive conduct. *Citris El Dorado*, 244 Cal. Rptr. 3d at 376–77. Thus, the Novobilskis fail to state a claim for wrongful foreclosure. Moreover, the Novobilskis failed to file an opposition or appear at the hearing in this matter and therefore have not furnished the Court with any additional information suggesting that they would be able to cure this defect through amendment. Accordingly, the Court GRANTS SLS's Motion to Dismiss the Novobilskis' claim for wrongful foreclosure WITHOUT LEAVE TO AMEND with respect to their claim for wrongful foreclosure.

---

[10] The Novobilskis cite to CAL. CIV. *PROC.* CODE § 2924, but it appears they intend to refer to CAL. CIV. CODE § 2924.

**G.  The Novobilskis fail to state a claim for violation of the UCL.**

Lastly, SLS seeks dismissal of the Novobilskis' seventh cause of action for violation of the UCL. Mot. at 8–9. The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. CAL. BUS. & PROF. CODE § 17200. Each prong "is a separate and distinct basis for liability." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). In its April 22 MTD Order, the Court found that the Novobilskis failed to properly plead their claim for violation of the UCL's unlawful, unfair, and fraudulent prongs. April 22 MTD Order at 14–18. Specifically, the Court found that: (1) the UCL unlawful prong claim was premised on the Novobilskis' multiple prior causes of action, none of which they properly pleaded; (2) the Novobilskis failed to plead specific facts sufficient to support the unfairness prong; and (3) the Novobilskis' allegations for a violation of the UCL fraudulent prong were "nothing more than threadbare recitals" and provided no explanation regarding why SLS's actions were "likely to deceive the public." *Id.* (quoting *Iqbal*, 556 U.S. at 563).[11]

The Novobilskis' UCL claim is based on their assertion that SLS failed to provide monthly statements, allowed interest and other fees to illegally accrue on the Novobilskis' loan, and filed a wrongful Notice of Default. *See* FAC ¶¶ 81–84. The Novobilskis allege that SLS is liable under all three prongs of the UCL. *Id.* ¶¶ 80, 85, 86.  Notably, the Novobilskis' FAC with respect to the UCL claim is nearly identical to their original complaint, aside from the following additional paragraph:

> Under Federal Law, a lender and servicer are required to provide monthly statements unless a loan is in active bankruptcy or charged off. 12 CFR § 1026.41 Plaintiffs have not received any statements on their Second Loan. Plaintiffs are unsure if the subject second loan was charged off. If the Second Loan was charged off, Defendants have illegally accrued interest and other fees on the Second Loan for the duration of the time the Second Loan was charged off. However, if the Second Loan was not actually charged off, as Plaintiffs were advised, Defendants, and its predecessors in interest (as well as the current beneficiary and its predecessors in interest) have violated TILAs monthly statement mandate under 12 CFR § 1026.41. Also *see* "Regulation Z Statutes"

---

[11] The Court, in finding that the Novobilskis failed to properly plead each of the UCL's three prongs, did not reach the question of whether the Novobilskis lacked standing to bring a claim under the UCL in its April 22 MTD Order.

12 CFR § 1026.7 (requirement to send monthly mortgage statements) and 12 CFR 1026.5(b)(2) (charge off requires them to stop accruing fees and interest).

FAC ¶ 81.

SLS asserts that the Novobilskis' UCL claim is duplicative of their other improperly pleaded claims and that they: (1) lack standing to bring a claim under the UCL; (2) fail to allege any unlawful business practices; (3) fail to allege any unfair business practices; and (4) fail to allege any fraudulent business practices. Mot. at 8–10.

To have standing under California's UCL, a plaintiff must establish that they (1) suffered an injury in fact; and (2) lost money or property as a result of the unfair competition. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). The California Supreme Court has interpreted the standing requirement to include a causation element, as the plaintiff must "show that the economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 885 (Cal. 2011). Here, the Court finds that the Novobilskis lack cause and have not demonstrated that their loss was the result of SLS's alleged unlawful conduct or unfair business practices. Neither party disputes that the Novobilskis defaulted on their mortgage payments, giving rise to the foreclosure process. Regardless of whether SLS engaged in unlawful conduct after the fact, the Novobilskis' default appears to have pre-dated any such actions. The Novobilskis therefore have failed to establish a causal link between their injury and SLS's conduct and, as a result, have failed to properly demonstrate standing under the UCL. *See, e.g.*, *Daro v. Superior Court*, 61 Cal. Rptr. 3d 716, 729 (Ct. App. 2007) ("That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law."); *Junod v. Mortgage Elec. Registration Sys., Inc.*, 584 F. App'x 465, 469 (9th Cir. 2014) (finding that plaintiffs' default "triggered the foreclosure of their home, not the manner in which their Note and Deed of Trust were transferred" and therefore concluding that they did not demonstrate causation and lacked standing).

Moreover, the Novobilskis failed to file an opposition or appear at the hearing in this matter and therefore have not furnished the Court with any additional information suggesting that they would be able to cure this defect through amendment. Accordingly, the Court GRANTS SLS's

Motion to Dismiss the Novobilskis' UCL claim WITHOUT LEAVE TO AMEND. It is therefore unnecessary to reach the other arguments raised by SLS with respect to this claim.

## **CONCLUSION**

In light of the foregoing, the Court hereby ORDERS as follows:

1. The Court GRANTS the Request for Judicial Notice with respect to Exhibits 1–6 and DENIES the Request for Judicial Notice with respect to Exhibits 7–14;

2. The Court GRANTS the Motion to Dismiss as to the California Civil Code § 2924.17, promissory estoppel, negligent misrepresentation, wrongful foreclosure, and CAL. BUS. & PROF. CODE § 17200 claims WITHOUT LEAVE TO AMEND; and

3. The Court DENIES the Motion to Dismiss as to the Federal Fair Debt Collection Practice Act, Rosenthal Fair Debt Collections Practices Act, and Truth in Lending Act claims.

IT IS SO ORDERED.

Dated: August 16, 2022

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge